UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DATA CAPTURE SOLUTIONS – REPAIR & REMARKETING, INC., | :  307CV00237 |
| Plaintiff, | :  Civil No: JCH |
| v. | :  **Jury Trial Demanded** |
| SYMBOL TECHNOLOGIES, INC. | : |
| | :  February 15, 2007 |
| Defendant. | : |

## COMPLAINT

Plaintiff Data Capture Solutions – Repair and Remarketing, Inc. ("Data Capture") brings this action to redress Defendant Symbol Technologies, Inc.'s. ("Symbol") price discrimination between Data Capture and its competitors relating to the sale of Symbol products.

## JURISDICTION

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337 in that a claim is brought under the Robinson-Patman Act, 15 U.S.C. § 13 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 14 and 26. The Court has supplemental jurisdiction of the state law claims herein pursuant to 28 U.S.C. § 1367 and the doctrine of pendent jurisdiction.

2. This Court also has jurisdiction over all claims pursuant to 28 U.S.C. § 1332 in that the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

## PARTIES AND VENUE

3. Plaintiff Data Capture is a Connecticut corporation with its principal place of business at 151 Sheldon Road, Manchester, Connecticut. Founded in 1992 out of Joe Teixeira's garage, Data Capture currently employs over 125 people. Data Capture has been a reseller of Symbol's products -- hand-held and personal digital assistant scanner-integrated mobile and wireless information capture and management systems and their components -- -- to end-user customers since Date Capture's inception, and has been one of the largest resellers of Symbol products. At various times between 1992 to date, Data Capture's sales consisted solely of Symbol products. Data Capture also provides service and sells used/refurbished replacement parts to its end-user customers as needed when their Symbol products no longer function properly.

4. Defendant Symbol Technologies, Inc. is a Delaware corporation with its principal place of business at One Symbol Plaza, Holtsville, New York. Symbol is a global leader in mobile enterprise solutions, which includes information systems that integrate application-specific handheld computers with wireless networks for data and voice, and bar code scanners for data capture. Symbol manufactures and sells scanner integrated mobile and wireless information management systems. Symbol also provides customer support and professional services related to these systems. For 2005, Symbol Technologies, Inc. reported total revenues of $1,478 million and $32 million in net earnings.

5. Venue is proper in this jurisdiction under 28 U.S.C. §§ 1391(b) and (c) and 15 U.S.C. § 22 in that defendant Symbol transacts business and/or may be found in this district, and because a substantial part of the events and omissions giving rise to the claims alleged occurred in this jurisdiction.

## FACTS

6. The products at issue in this action are hand-held scanner-integrated mobile and wireless information capture and management systems and components (hereinafter referred to as "Mobile Information Capture and Management Products" and Mobile Information Capture and Management Products manufactured or sold by Symbol are sometimes referred to herein as "Symbol Products.")

7. Symbol and resellers of Symbol Products sell Mobile Information Capture and Management Products throughout the United States. Symbol is a dominant seller of Mobile Information Capture and Management Products and Symbol Products are highly desired by end-users.

8. Symbol claims ownership to over 1,000 United States patents related to Mobile Information Capture and Management Products, including numerous patents covering the essential scanner technologies (as well as products, methods and designs). Virtually all competitive manufacturers in the relevant product market license Symbol's patented scanning technology in order to manufacture competitive products.

9. Components within the array of Mobile Information Capture and Management Products can cost anywhere from $500 to $2,000 per device depending on the device's functionality. Industrial and commercial customers typically buy hundreds or even thousands of units at one time, and then add units as they add employees or need additional functionality or replacements or expand their business due to new store openings or new distribution centers, thereby becoming repeat customers for the reseller making the initial sales. The products typically last for 5-10 years. End-users typically purchase Mobile Information Capture and Management Products from resellers, like Data Capture, who submit bids to potential customers and who purchase the necessary units if they win the bid at a given customer.

10. Given the expense of these products and their expected longevity, end-users typically have their products serviced, or upgraded rather than replacing non-functioning units with new units. Data Capture's repair service is highly valued by its customers because of Data Capture's quick turn around time, its willingness to service products no longer serviced by Symbol and its competitive prices. Data Capture provides its customers with used and refurbished parts for Symbol Products, as well as Symbol Products that have been refurbished. These sales by Data Capture typically result from the relationship that Data Capture has developed with the end-user as a result of providing all or part of the initial or replacement systems.

11. Since 1992, Data Capture has been reselling to end-users Symbol Products that Data Capture purchased directly from Symbol or, more recently, purchased from Symbol distributors as well.

12. Data Capture competes with other resellers of Symbol Products for sales of new Symbol Mobile Information Capture and Management Products and related products and services.

13. In addition, Data Capture competes with Symbol and its other resellers by selling used and refurbished products to its end-user customers to replace their worn or non-functioning Mobile Information Capture and Management Products. Data Capture also competes with Symbol and its other resellers by selling Mobile Information Capture and Management Products consisting of a combination of new Symbol Products as well as used and refurbished products.

14. For 14 years, Data Capture has enjoyed contractual and business relationships with numerous end-users. To retain these end-user customers and improve its relationship with them, Data Capture has, over time, developed specialized marketing plans and programs,

invested in technology, created a sales infrastructure, trained a dedicated sales staff, and maintained appropriate financial capabilities – all in an effort to enhance its relationships with existing and potential customers. As a result, many end-users prefer to purchase Mobile Information Capture and Management Products from Data Capture whenever Data Capture can be price-competitive with other resellers.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANT: VIOLATION OF SHERMAN ACT, § 2, AS AMENDED BY THE ROBINSON-PATMAN ACT, 15 U.S.C. § 13

15. Data Capture incorporates by reference each and every allegation contained in paragraphs 1 through 14 above as if set forth here in full.

16. Symbol sells products for Mobile Information Capture and Management Products in interstate commerce. Symbol's sales and production operations cross multiple state borders.

17. The structure of sales for Mobile Information Capture and Management Products is often based on a request and bid process. First, the end-user customer will solicit bids from resellers, such as Data Capture and its competitors. Sometimes the request specifications can only be met by using Symbol Products. Symbol provides discounts to resellers in order for resellers to bid competitively on such end-users' requests. These discounts are know as "price exceptions." Before submitting bids, resellers wanting to bid seek price exceptions from Symbol. Resellers will then submit their bids, which reflect any price exceptions granted by Symbol. If a reseller does not receive a price exception but another reseller offering a bid does, the reseller that has obtained a price exception will be able to offer the end-user a lower price and, as a result, almost always wins the bid over a reseller that has not been granted a price exception. Because price exceptions are sought and granted for particular bids, the price exceptions sought and/or granted are for identical Symbol Products.

18. Beginning at least as early as 2002 and continuing to the present, Symbol has consistently provided significant price exceptions for its Mobile Information Capture and Management Products to resellers competing with Data Capture on specific bids but has not provided any price exceptions to Data Capture for those same bids or provided price exceptions that provided Data Capture significantly less of a discount. As a result, Symbol Products are sold to resellers that compete with Data Capture on particular bids at prices lower than Data Capture may purchase those identical Symbol Products. At times, the Symbol products subject to the above described discriminatory pricing scheme are sold directly to resellers by Symbol and at times they are sold to resellers by Symbol authorized distributors, but in all cases Symbol determines whether and to what extent price exceptions will be made and the extent of any price exceptions. Where a price exception is granted for a purchase from a distributor, the distributor is required by Symbol to pass the discount to the reseller seeking to bid. Thus, in all cases, Symbol determines whether discriminatory prices will be charged and the extent of such discrimination and controls the sales made pursuant to price exceptions. The sales made to and by the resellers who have been granted price exceptions were made in interstate commerce.

19. As a result of Symbol's use of discriminatory price exceptions, Data Capture has been unable to effectively compete on many bidding opportunities and has lost sales and profits related not only to the Mobile Data Capture and Management Products for which discriminatory discounts were granted to others, but also for a range of related products and services that would be attendant with the winning of such bids.

20. There are many examples of situations where Data Capture was unable to win a bid due to the granting of price exceptions to competing resellers that were either not granted to Data Capture at all or where the price exception granted to Data Capture was a lesser discount.

For example, in February 2006, Data Capture was competing for a request for purchase issued by Ritz Camera for the Symbol Product known as the MC1000s. Symbol granted a reseller located in the Baltimore-Washington area competing for this sale with Data Capture a significant price exception, but refused to provide a price exception to Data Capture. As a result, the other reseller won the bid, valued at approximately $500,000.00 despite the fact that Ritz Camera would have dealt with Data Capture if it could have been price-competitive with the reseller favored by Symbol. The sales made to and by the winning bidder were made in interstate commerce.

21. Another example, involved a request for proposals issued by United Natural Foods in May of 2003, which sought to purchase Symbol SPT-1800 handheld units. Symbol granted a competing reseller a significant price exception but refused to provide a price exception to Data Capture. As a result, the competing reseller won the bid, valued in excess of $80,000 for the initial purchase and in excess of $1,000,000 as United Natural Foods rolls out its purchase plan over a multi-year period, despite the fact that United Natural Foods would have preferred to deal with Data Capture if it could have been price-competitive with the reseller favored by Symbol. The sales made to and by the winning bidder were made in interstate commerce.

22. Yet another example, involved a request from Ocean State Job Lot, which sought to purchase Mobile Information Capture and Management Products in 2005. Symbol granted a competing reseller a significant price exception but refused to provide a price exception to Data Capture. As a result, the competing reseller won the bid, valued in excess of $275,000, despite the fact that Ocean State Job Lot would have preferred to deal with Data Capture if it could have

been price-competitive with the reseller favored by Symbol. The sales made to and by the winning bidder were made in interstate commerce.

23. A further example involved Scholastic Books, a long time Data Capture customer. Starting in late 2005, Scholastic Books sought to make a series of purchases of Mobile Information Capture and Management Products. In 2006, Symbol granted Manhattan Associates, a reseller competing with Data Capture to bid on these requests, significant price exceptions but refused to provide any price exceptions to Data Capture. As a result, the competing reseller won the bids valued in excess of $50,000 for the initial purchase and in excess of $500,000 as Scholastic rolls out its purchase plan over a multi-year period, despite the that fact that Scholastic Books had for several years purchased from Data Capture and would have preferred to continue to deal with Data Capture if it could have been price-competitive with the reseller favored by Symbol. The sales made to and by the winning bidder were made in interstate commerce.

24. Similar discriminatory and significant price exceptions on identical products have been granted to competing resellers, but not to Data Capture, with similar results, at least since 2002 and continuing to the present. In such circumstances, the sales made to and by the resellers who have been granted price exceptions were made in interstate commerce.

25. Symbol's conduct alleged herein has put Data Capture at a competitive disadvantage vis-a-vis competing resellers of Symbol Mobile Information Capture and Management Products and has resulted in significant lost sales of such products and concomitant lost profits. It has also resulted in lost sales and profits related to ancillary products and services that typically result from the winning of bids as described above. As a result of the above price discrimination, competition between Data Capture and the resellers receiving the

more favorable price exceptions, and in the sale of Mobile Information Capture and Management Products generally, has been injured.

26. Symbol's conduct alleged herein violates the Robinson-Patman Act, 15 U.S.C. § 13(a).

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANT: VIOLATION OF THE CONNECTICUT ANTITRUST ACT, CONNECTICUT GENERAL STATUTES § 35-45 – PRICE DISCRIMINATION

27. Data Capture incorporates by reference each and every allegation contained in paragraphs 1 through 26 above as if set forth here in full.

28. The above referenced conduct was entered into or effectuated in whole or part in the State of Connecticut.

29. The price discrimination alleged herein has put Data Capture at a competitive disadvantage vis-a-vis competing resellers of Symbol Mobile Information Capture and Management Products and has resulted in significant lost sales of such products and concomitant lost profits. It has also resulted in lost sales and profits related to ancillary products and services that typically result from the winning of bids as described above. As a result of the price discrimination described above, competition between Data Capture and the resellers receiving the more favorable price exceptions, and in the sale of Mobile Information Capture and Management Products generally, has been injured.

30. Symbol's conduct alleged herein violates the Connecticut Antitrust Act, Section 35-45 of the Connecticut General Statutes.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANT: VIOALTION OF THECONNECTICUT UNFAIR TRADE PRACTICES ACT. CONNECTICUT GENERAL STATUTES §42-110b – UNFAIR METHOD OF COMPETITION.

31. Data Capture incorporates by reference each and every allegation contained in paragraphs 1 through 30 above as if set forth here in full.

32. The conduct alleged herein involves the sale or offering for sale of things of value in Connecticut.

33. Data Capture competes with Symbol for Mobile Data Capture and Management System sales by offering end-users used and refurbished Mobile Data Capture and Management System products or hybrid Mobile Information Capture and Management Products that mix new Symbol products components with refurbished components. Data Capture has had a unique ability to compete with Symbol in this way because Data Capture maintained an extremely large inventory of new and used refurbished Mobile Information Capture and Management Products and has had a reputation in the market for being able to provide end-users with Mobile Information Capture and Management Products that are competitive with new Symbol components.

34. Symbol undertook the conduct alleged herein with the purpose and intent to injure Data Capture in its business. On information and belief, Symbol undertook the conduct alleged herein because it desired to limit, thwart, frustrate or forestall the competition for Mobile Information Capture and Management Products sales that Symbol faced from Data Capture's sales of used and refurbished Mobile Information Capture and Management Products and from Data Capture's sales of hybrid Mobile Information Capture and Management Products that mix new Symbol Products components with refurbished components.

35. Symbol's conduct alleged herein has injured Data Capture and has put Data Capture at a competitive disadvantage vis-a-vis competing resellers of Symbol Mobile Information Capture and Management Products and has resulted in significant lost sales of such products and concomitant lost profits. It has also resulted in lost sales and profits related to ancillary products and services that typically result from the winning bids as described above. As a result of the above price discrimination, competition between Data Capture and the resellers receiving the more favorable price exceptions, and in the sale of Mobile Information Capture and Management Products generally, has been injured.

36. As a result of Symbol's conduct alleged herein, Data Capture has suffered ascertainable loss.

37. Symbol's conduct alleged herein constitutes an unfair method of competition in violation of the Connecticut Unfair Trade Practices Act, Section 42-110b of the Connecticut General Statutes.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT: VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT, CONNECTICUT GENERAL STATUTES § 42-110b – UNFAIR AND DECEPTIVE ACTS AND PRACTICES

38. Data Capture incorporates by reference each and every allegation contained in paragraphs 1 through 37 above as if set forth here in full.

39. The conduct alleged herein involves the sale or offering for sale of things of value in Connecticut.

40. Data Capture competes with Symbol for Mobile Information Capture and Management Product sales by offering end-users used and refurbished Mobile Information Capture and Management Products or hybrid Mobile Information Capture and Management

Products that mix new Symbol Products with refurbished components. Data Capture has had a unique ability to compete with Symbol in this way because Data Capture has maintained an extremely large inventory of new and used refurbished Mobile Information Capture and Management Products and has had a reputation in the market for being able to provide end-users with Mobile Information Capture and Management Products that are competitive with new Symbol components..

41. Symbol undertook the conduct alleged herein with the purpose and intent to injure Data Capture in its business. Symbol undertook the conduct alleged herein because it desired to limit, thwart, frustrate or forestall the competition for Mobile Information Capture and Management Product sales that Symbol had faced from Data Capture's sales of used and refurbished Mobile Information Capture and Management Products and from Data Capture's sales of hybrid Mobile Data Capture and Management Products that mix new Symbol Products with refurbished components.

42. Symbol's conduct alleged herein has injured Data Capture and has put Data Capture at a competitive disadvantage vis-a-vis competing resellers of Symbol Mobile Information Capture and Management Products and has resulted in significant lost sales of such products and concomitant lost profits. It has also resulted in lost sales and profits related to ancillary products and services that typically result from the winning bids as described above. As a result of the above price discrimination, competition between Data Capture and the resellers receiving the more favorable price exceptions, and in the sale of Mobile Information Capture and Management Products generally, has been injured.

43. As a result of Symbol's conduct alleged herein, Data Capture has suffered ascertainable loss.

44.   Symbol's conduct alleged herein (1) offends public policy, including public policy embodied in the antitrust laws, the laws against price discrimination, the common law of unfair competition, the policies against tortious interference with contracts and business expectancies, (2) is immoral, unethical, oppressive and unscrupulous, and (3) has caused substantial injury to businesses, consumers and competitors.

45.   Symbol's conduct alleged herein constitutes unfair and deceptive acts and practices in violation of the Connecticut Unfair Trade Practices Act, Section 42-110b of the Connecticut General Statutes.

**WHEREFORE**, Data Capture respectfully requests that this Court enter judgment on its behalf for the following relief:

1.   Injunctive relief preventing Defendant from engaging in the conduct alleged herein pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, the Connecticut Antitrust Act, § 35-34 and with the Connecticut Unfair Trade Practices Act, § 42-110g;

2.   Awarding Data Capture compensatory monetary damages pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 14;

3.   Awarding Data Capture compensatory monetary damages pursuant to the Connecticut Antitrust Act, § 35-35;

4.   Awarding Data Capture compensatory monetary damages pursuant to the Connecticut Unfair Trade Practices Act, § 42-110g;

5.   Awarding trebled monetary damages in accordance with Section 4 of the Clayton Act, 15 U.S.C. § 14.

6.   Awarding trebled monetary damages in accordance with the Connecticut Antitrust Act, § 35-35;

7. Awarding punitive damages in accordance with the Connecticut Unfair Trade Practices Act, § 42-110g;

8. Awarding Data Capture recovery for its costs for this suit, including attorneys' fees and costs in accordance with Section 4 of the Clayton Act, 15 U.S.C. § 14, Section 16 of the Clayton Act, 15 U.S.C. § 26, the Connecticut Antitrust Act, § 35-34, the Connecticut Antitrust Act, § 35-35, and with the Connecticut Unfair Trade Practices Act, § 42-110g; and

9. Awarding Data Capture such further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Fed.R. Civ. P. 38(a), Plaintiffs hereby demand a trial by jury of all issues triable by a jury.

By: _____
Eliot B. Gersten (ct 05213)
GERSTEN CLIFFORD & ROME LLP
214 Main Street
Hartford, CT 06106
Tel: (860) 527-7044
Fax: (860) 527-4968
Email: egersten@gcrlaw.net

William M. Rubenstein (ct08834)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
Tel: (860) 275-8100
Fax: (860) 275-8101
Email: wmr@avhlaw.com

Attorneys for Plaintiff Data Capture Solutions –
Repair and Remarketing, Inc..

I hereby certify that a copy of this Complaint was mailed to the Connecticut Attorney General and the Connecticut Commissioner of Consumer Protection pursuant to Conn. Gen. Stat. § 42-110g(c).

_____
Eliot B. Gersten