UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DATA CAPTURE SOLUTIONS - : | |
| REPAIR & REMARKETING, INC., : | |
|  Plaintiff, : | |
| v. : | CIVIL ACTION NO. |
| : | 07-CV-237 (JCH) |
| SYMBOL TECHNOLOGIES, INC, : | |
|  Defendant. : | |
| : | October 18, 2007 |

**AMENDED RULING ON DEFENDANT'S MOTION TO DISMISS (Doc. No. 12) AND PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY (Doc. No. 24)**

**I.     INTRODUCTION**

Plaintiff Data Capture Solutions - Repair and Remarketing, Inc. ("Data Capture") brings this action against defendant Symbol Technologies, Inc. ("Symbol"), alleging that Symbol has engaged in illegal price discrimination in the sale of its products. Data Capture has stated claims under section 2 of the Sherman Act as amended by the Robinson-Patman Act, 15 U.S.C. §13, and under the Connecticut Antitrust Act, Conn. Gen. Stat. § 35-45, and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(b). Defendant Symbol moves to dismiss all claims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted.

**II.     FACTS**[1]

Data Capture, a Connecticut corporation, is a reseller of products made by Symbol, a Delaware corporation. The products involved are hand-held, scanner-

---

[1]The following facts are taken from the plaintiff's Complaint (Doc. No. 1).

1

integrated, wireless information capture and management systems and the components of those systems (hereinafter "Products"). These Products are used by large retailers for inventory control by scanning bar code information for transmittal to a central location for data processing. Pl. Memo in Opp. at 2 (Doc. No. 19). These Products cost between $500 and $2,000 per device. End-users typically buy hundreds or thousands of these devices at a time and supplement their supply as needed during the 5-10 year life-span of the device. End-users usually buy these products from resellers, such as Data Capture, who submit bids to supply the products. Resellers wanting to bid will request a discount from Symbol known as a "price exception." The reseller's bid to the end-user will reflect any price exception granted. Thus a reseller who has been granted a price exception will usually be able to offer a lower price to the end user and win the bid. Resellers usually do not buy the products from Symbol until they have successfully won a bid. Data Capture has been reselling Symbol Products purchased from Symbol or another distributor since 1992.

Beginning as early as 2002, and continuing to the present, Symbol has been providing price exceptions to Data Capture's competitors without providing equivalent price exceptions to Data Capture on the same bids. As a result, Data Capture has been unable to win bidding opportunities and has lost both sales of Symbol Products and sales of the related products and services that resellers typically supply end-users. Data Capture cites four specific examples where Data Capture lost bids due to price exceptions given by Symbol to Data Capture's competitors but not offered to Data Capture.

Data Capture maintains a large inventory of new and used Symbol products with which it competes directly with Symbol to sell refurbished Products and hybrid Products combining new and refurbished components. Data alleges that Symbol has engaged in discriminatory pricing by offering price exceptions to Data Capture's competitors with the intent to injure Data Capture in its business.

## III.  STANDARD OF REVIEW

In deciding a motion to dismiss, the court takes the allegations of the Complaint as true, and construes them in a manner favorable to the pleader. Hoover v. Ronwin, 466 U.S. 558, 587 (1984); see Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overrruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

A motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6) tests only the adequacy of the complaint. United States v. City of New York, 359 F.3d 83, 87 (2d Cir. 2004). A Rule 12(b)(6) motion to dismiss cannot be granted simply because recovery appears remote or unlikely on the face of a complaint. Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-5 (2007).

IV.     DISCUSSION

   **A. The Robinson-Patman Act Claim (Count One)**

The Sherman Act, as amended by the Robinson-Patman Act (the "RPA"), states in relevant part in section 2, that:

> "[i]t shall be unlawful for any person engaged in commerce . . . to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce . . . and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy or prevent competition. . . ." 15 U.S.C. §13.

Congress' goal in enacting section 2 was to "curb the use by financially powerful corporations of localized price-cutting tactics which had gravely impaired the competitive position of other sellers." Volvo Trucks North America, Inc. v. Reeder-Simco GMC, Inc., 456 U.S. 164, 175 (2006)(internal citations omitted). The changes to the Sherman Act implemented by the RPA were "to target the perceived harm to competition occasioned by powerful buyers, rather than sellers; specifically, Congress responded to the advent of large chain stores, enterprises with the clout to obtain lower prices for goods than smaller buyers could demand." Id. (internal citations omitted).

The four elements of a claim under the RPA are: (1) that the sales were made in interstate commerce, (2) the products were of like grade and quality, (3) that the seller discriminated in price between the plaintiff and another purchaser, and (4) that the effect of such discrimination may be to injure, destroy, or prevent competition to the advantage of a favored purchaser. Id., at 870.

Symbol argues that Data Capture has failed to state a claim under the RPA because it has failed to allege "two completed comparable sales to two different purchasers" under the so-called "Two-Purchaser Rule." Def.'s Mem. in Supp. of Mot. to Dis., Attach. 1, p. 4 (hereinafter "Def.'s Mem.) (Doc. No. 12). Neither the Supreme Court nor the Second Circuit have decided whether discriminatory quotes to resellers competing for the same bid establishes a claim under the RPA. See Volvo, 546 U.S. at 180 (". . . Volvo and the United States argue, the Act does not reach markets characterized by competitive bidding and special-order sales, as opposed to sales from inventory . . . . We need not decide that question today.").

Courts across the country have varied widely on their interpretation of the RPA and the Two-Purchaser Rule. On one end, two Circuit Courts have found there is no Two-Purchaser requirement. The Sixth Circuit has held that an unsuccessful bidder can state a claim for price discrimination under the RPA. Allied Accessories & Auto Parts Co., Inc., v. General Motors Corp., 825 F.2d 971, 973 (6th Cir. 1987)(allowing claim to proceed but not discussing "bidder" or "purchaser" status). Likewise, the Fifth Circuit has held that no actual purchases must be made to state a claim under the RPA. American Can Co., v. Bruce's Juices, Inc., 187 F.2d 919, 925(5th Cir. 1951)("plaintiff was not bound to purchase [the more expensive product] in order to attain status of a competing purchaser under the Act, as its failure to do so was directly attributable to defendant's own discriminatory practice."); see also Industrial Burner Systems, Inc., v. Maxon Corp., 275 F.Supp. 2d 878, 886-7 (E.D.Mich. 2003)(holding that unsuccessful bidders can state an RPA claim because "the relevant competition is the market for the bid.").

Other courts have found that the Two Purchaser rule applies, but that there are exceptions to it. One common interpretation is that previous purchases can be used to establish "purchaser" status for a claim under the RPA. See DeLong Equipment Co. v. Washington Mills Electro Mineral Corp., 990 F.2d 1186, 1202 (11th Cir., 1993)("While there must be two sales made by the same seller to at least two different purchasers at two different prices, there is no requirement that the two sales be made at precisely the same time or place."); Hartley & Parker, Inc. v. Florida Beverage Corp., 307 F.2d 916, 921 (5th Cir. 1962)("substantial stock" purchased before the price discrimination began can establish purchaser status for claim under the RPA);[2] Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc., 2005 WL 724117, *8 (E.D.P.A. 2005)(some successful past bids gave plaintiff "purchaser status"); Maier-Schule GMC, Inc., v. General Motors Corp., 780 F.Supp. 984, 990 (W.D.N.Y. 1991) (distinguishing Hartley but acknowledging that prior purchases sold out of inventory could satisfy purchaser status). Another exception is that some purchases made during the period of price discrimination may qualify a plaintiff as a "purchaser" for purposes of the Act. Reeder-Simco GMC, Inc. v. Volvo GM Heavy Truck Corp., 374 F.3d 701, 708 (8th Cir. 2004), rev'd on other grounds, Volvo, 546 U.S. 164, (2006).

At the other end, several courts, including some in this Circuit, have dismissed claims under the RPA for failure to demonstrate two purchases at two different prices by two different purchasers. Crossroads Cogeneration Corp. v. Orange & Rockland

---

[2] While the Fifth Circuit's acknowledgment of the Two-Purchaser rule in Hartley seems to contradict its holding of Bruce's Juices, the court in Hartley never addressed the bidder-purchaser distinction and so does not explicitly overrule Bruce's Juices.

Utilities, Inc., (3d Cir. 1998)("Merely offering lower prices to a customer does not state a price discrimination claim."); Fusco v. Xerox Corp., 676 F.2d 332, 337 (8th Cir. 1982)("at least two sales must be alleged to different purchasers at different prices . . . mere offers to sell are not sufficient."); M.C. Manufacturing Co. v. Texas Foundaries, Inc., 517 F.2d 1059, 1067 (5th Cir. 1975)(competitive bidding creates a "separate, distinct market open only to a single producer" precluding the possibility that competing bidders are in competition for purposes of the Act)(distinguishing but not overruling Bruice's Juices); Shaw's v. Wilson-Jones Co., 105 F.2d 331, 333 (3d Cir. 1939)("The discrimination in price . . . must be between two purchasers . . . [i]t does not mean a prospective purchaser, or one who wishes to purchase . . . ."); Cancall PCS, LLC v. Omnipoint Corp., 2000 WL 272309, *8 (S.D.N.Y. 2000)("plaintiff's do not allege that there have been two contemporaneous sales of the same commodity at different prices . . . [r]ather, plaintiffs allege only that the [defendants] refused to sell these items to plaintiffs."); Terry's Floor Fashions, Inc. v. Burlington Industries, Inc., 568 F.Supp. 205, 216 (E.D.N.C. 1983), aff'd 763 F.2d 604 (4th Cir. 1985)("a sale at one price and a mere offer to sell at another price is insufficient to show a Robinson-Patman Act violation")(internal citations omitted); Highspire, Inc. v. UKF America, Inc., 469 F.Supp. 1009, 1012 (S.D.N.Y. 1979)("A sale at one price and a mere offer to sell at another price is not sufficient.")(internal citations omitted).

  This court agrees with the Third, Fifth and Eighth Circuits that mere offers to sell at different prices do not suffice to state a claim under the Robinson-Patman Act. The court finds that the plain language of the statute – "to discriminate in price between different purchasers of commodities of like grade and quality" – requires that two sales

take place at different prices to different purchasers.  Nothing in the language of the statute anticipates the prohibition of different prices being offered to potential buyers in a bidding situation.  Reading "purchasers" to mean "bidders," as Data Capture's claim would require, would not only do violence to the statutory language, but would not serve the purpose of the RPA as described by the Supreme Court in Volvo, which is to prevent big retailers from harming small retailers by exerting monopolistic pressure over suppliers.  Volvo, 546 U.S. at 175.   Like the parties in Volvo, "there is no evidence that any favored purchaser possesses market power" in this instance, and "the allegedly favored purchasers are dealers with little resemblance to large independent department stores or chain operations."  Id. at 181.

Furthermore, the Two Purchaser rule is consistent with the Supreme Court's finding that "[i]nterbrand competition . . . is the primary concern of antitrust law" and that the RPA should not be read to be "geared more to the protection of existing *competitors* than to the stimulation of *competition*."  Id. (emphasis in original).  In Volvo, the Supreme Court noted that, "a change in a supplier's distribution system, may be a 'simultaneous reduction of intrabrand competition and stimulation of interbrand competition'".  Id. (quoting Continental T. V., Inc. v. GTE Sylvania, Inc., 433 U.S. 36, 51-2 (1977).  Therefore, the Two Purchaser rule is consistent with the Supreme Court's interpretation of the RPA in that it excludes claims, like this one, that complain of price discrimination in intrabrand-bidding situations.

Consistent with this court's finding that the Two Purchaser rule applies to claims under the Robinson-Patman act, the court adopts the standard stated by the Third Circuit in Crossroads, that in order to state a claim under the Robinson-Patman Act a

plaintiff must "allege facts to demonstrate that (1) the defendant made at least two contemporary sales of the same commodity at different prices to different purchasers; and (2) the effect of such discrimination was to injure competition." Crossroads, 159 F.3d at 142 (citing Brooke Group Ltd. V. Brown & Williamson Tobacco Corp., 509 U.S. 209, 219-27 (1993)). Furthermore, the complaint must allege facts sufficient to establish that the goods are "commodities of like grade and quality" such that discriminatory pricing of the "same commodity" by the seller is evident. 15 U.S.C. §13.

For the foregoing reasons, Data Capture's claim for relief under the Robinson-Patman Act is dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

### B. State Law Claims

#### 1. The Connecticut Antitrust Act Claim (Count Two)

Data Capture claims that the "price discrimination" described in their Robinson-Patman Act claim also violates the Connecticut Antitrust Act, codified in Connecticut General Statues section 35-45. See Complaint at ¶ 30 (Doc. No. 1). Symbol argues that section 35-45 is interpreted in the same way as the Robinson-Patman Act, and thus if Data Capture fails to state a claim under the RPA, it must also fail to state a claim under section 35-45. Def.'s Mem. at 11. The court agrees.

Section 35-45(a) states that

> "no person engaged in commerce . . . shall discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption or resale within Connecticut, where the effect of such discrimination may be to lessen competition or tend to create monopoly in any line of commerce, or to

injure, destroy or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination . . . ."

CONN. GEN. STAT. § 35-45(a).

It is clear from the language of the statute that "[s]ection 35-45 (a) is substantially identical to Section 2(a) of the Robinson-Patman Act and thus should be construed in light of federal precedent."[3] Retail Service Associates v. Conagra Pet Products Co., 759 F.Supp. 976, 981 (D. Conn. 1991)(citing Elida, Inc. v. Harmor Realty Corp., 177 Conn. 218, 226 (1979)); see also State of Connecticut v. Exxon Corp., 1987 WL 92054, *2 (Conn. Super., 1987)("[i]t is clear that the two acts are more similar than dissimilar").  Because the court finds that Data Capture fails to state a claim under the RPA due to the Two Purchaser Rule, and the two Acts share the same language requiring "different purchasers," Data Capture also fails to state a claim under the Connecticut Antitrust Act.  See Exxon, 1987 WL 92054, *4 (finding the Two Purchaser Rule as a requirement of the Connecticut Antitrust Act, citing Terry's Floor Fashions, Inc. v. Burlington Industries, Inc., 568 F.Supp. 205, 216 (E.D.N.C. 1983), aff'd 763 F.2d 604 (4th Cir. 1985)).

---

[3]Data Capture does not dispute that the two statutes are identical for the purposes of deciding this motion.  See Pl.'s Mem. at 11 ("Data Capture agrees with Symbol that, while the price discrimination provision of the Connecticut Antitrust Act . . . contains differences . . . those differences do not implicate the narrow basis of Symbol's Motion to Dismiss.  Data Capture's Complaint states a claim under the Connecticut Antitrust Act for the same reasons it states a claim under the Robinson-Patman Act.").

### 2. The Connecticut Unfair Trade Practices Act Claims (Counts Three and Four)

Data Capture alleges that Symbol used unfair methods of competition, and unfair and deceptive acts and practices in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Connecticut General Statutes § 42-110b. See Complaint at ¶¶ 31-45. Symbol argues that these claims must be dismissed because they are "based wholly on [Data Capture's] Section 2(a) Robinson-Patman price discrimination allegations." Def.'s Mem. at 11. Symbol cites CDC Techs., Inc. v. IDEXX Labs., Inc., 7 F.Supp.2d 199, 132 (D.Conn. 1998), for the proposition that "[c]laims of unfair trade practices fail if no underlying antitrust violation is found." However, the CDC court based its holding on a Massachusetts district court opinion because the Connecticut Supreme Court had "not yet ruled on this issue." Id. Since that time, the Connecticut Supreme Court has specifically addressed the question of whether a claim under CUTPA must necessarily fail if it is based on the same factual allegations that fail to establish an antitrust violation. See Journal Publishing Co., Inc. v. Hartford Courant Co., 261 Conn. 673, 695 (2002). The Connecticut Supreme Court in Journal Publishing clearly stated that the standard for determining whether a practice violates CUTPA is

> "the criteria set out in the cigarette rule by the federal trade commission . . . (1) [w]hether the practice, without necessarily having been previously considered lawful, offends public policy as it has been established by statutes, the common law, or otherwise . . . (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers . . . ."

11

Id. (internal quotations omitted). While the Journal Court went on to find that the plaintiff had not established a violation of CUTPA, it did so after concluding that "the criteria of the 'cigarette rule' have not been met." Id. at 696. Therefore, the court's finding that Data Capture has failed to state a claim under the Robinson-Patman Act or the Connecticut Antitrust Act does not mean that Data Capture has also failed to state a claim under CUTPA.

**V.     CONCLUSION**

For the foregoing reasons, Symbol's Motion to Dismiss (Doc. No. 12) is GRANTED in part and DENIED in part. Data Capture's claims under the Robinson-Patman Act (Count 1) and the Connecticut Antitrust Act (Count 2) are dismissed for failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6). Data Capture's claims under the Connecticut Unfair Trade Practices Act (Counts 3 and 4) are not dismissed. Plaintiff's Motion for Leave to File Sur-Reply (Doc. No. 24) is GRANTED.

Data Capture has leave to replead their antitrust claims by filing an amended complaint consistent with this opinion, if done so within 14 days.

**SO ORDERED**

Dated at Bridgeport, Connecticut this 18th day of October, 2007.

                                         /s/ Janet C. Hall  
                                         Janet C. Hall  
                                         United States District Judge