UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DATA CAPTURE SOLUTIONS-  :
REPAIR & REMARKETING, INC., :
    Plaintiff :
 :
v. : CIV. NO. 3:07CV237 (JCH)
 :
SYMBOL TECHNOLOGIES, INC :
    Defendant :

## RULING ON DEFENDANT'S MOTION FOR ENTRY OF PROPOSED PROTECTIVE ORDER

The Court held a hearing in this case on November 29, 2007. After hearing from counsel, defendant's motion for entry of the proposed protective order is **GRANTED [Doc. #57]**.

## Background

There are two pending actions between the parties.[1] In the DCS Action, Data Capture Solutions - Repair and Remarketing, Inc. ("Data Capture") brings an action against Symbol Technologies, Inc. ("Symbol"), alleging that Symbol has engaged in illegal price discrimination in the sale of its products. Beginning as early as 2002, and continuing to the present, Symbol has been providing price exceptions to Data Capture's competitors without providing equivalent price exceptions to Data Capture on the same bids. As a result, Data Capture has been unable to win bidding opportunities and has lost both sales of Symbol Products and

---

[1] Data Capture Solutions - Repair & Remarketing, Inc. v. Symbol Technologies, docket # 3:07cv237 (JCH) (DCS action) and Symbol Technologies v. Data Capture Solutions - Repair & Remarketing, Inc., docket # 3:07cv610 (Symbol action).

1

sales of the related products and services that resellers typically supply end-users. Originally, Data Capture stated claims under section 2 of the Sherman Act as amended by the Robinson-Patman Act, 15 U.S.C. §13, and under the Connecticut Antitrust Act, Conn. Gen Stat. §35-45, and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat §42-110(b). On October 18, 2007, Judge Hall dismissed all claims except for those made under the Connecticut Unfair Trade Practices Act (Counts 3 and 4).[2] [Doc. #69].

In the Symbol action, Symbol alleges the DCS engaged in a pattern of misconduct in violation of the PartnerSelect Agreement then-in-effect between DCS and Symbol, including selling large quantities of "not new" Symbol products (i.e. repair or refurbished Symbol products) and conducting repair/"break-fix" service for customers. Symbol further alleges that DCS improperly labeled refurbished Symbol Products as certified by testing agencies and illegally affixed Symbol's trademark to products sold by DCS. Symbol asserts eight causes of action against DCS for breach of contract, unfair competition, unjust enrichment, copyright infringement and violations of the Lanham Act and New York General Business Law. DCS's amended answer and counterclaim, [Doc. #47], alleges that Symbol engaged in unlawful, false and deceptive conduct, for the sole purpose of eliminating competition by DCS against Symbol. DCS asserts an

---

[2] On November, 1, 2007, Symbol filed a Motion for Reconsideration [Doc. #77].

eleven-count counterclaim and seeks relief under the Lanham Act, 15 U.S.C. §1125(a)(1), New York General Business Law §§349(a), 350 and 350-a, common law of unjust enrichment, promissory estoppel, misappropriation of trade secrets, tortious interference with existing and prospective customer relations and fraud, and Conn. Gen. Stat. §42-110b.

FACTS

Data Capture, a Connecticut corporation, is a reseller of products made by Symbol, a Delaware corporation.[3] The products involved are hand-held, scanner integrated, wireless information capture and management systems and the components of those systems (hereinafter "Products"). These Products are used by large retailers for inventory control, scanning bar code information for transmission to a central location for data processing. Pl. Memo in Opp. At 2 [Doc. #19]. End-users usually buy these products from resellers such as Data Capture, who submit bids to supply the products. Resellers wanting to bid will request a discount from Symbol known as a "price exception." The reseller's bid to the end-user will reflect any price exception granted. Thus, a reseller who has been granted a price exception will usually be able to offer a lower price to the end user and win the bid over a reseller without a price exception. Resellers usually do not buy the products from Symbol until they have successfully won a bid. Data Capture has been reselling

---

[3]Symbol was acquired by Motorola on January 9, 2007.

Symbol Products purchased from Symbol or another distributer since 1992.

Protective Order

Under the current protective order, information or documents designated as confidential are not to be disclosed to third parties.[4] Pursuant to Rule 26(c)(7) of the Federal Rules of Civil Procedure, Symbol moves for entry of a proposed protective order. Symbol contends that this proposed protective order is necessary to protect Symbol's confidential, proprietary and competitively sensitive commercial information from disclosure to DCS, in particular to DCS' Founder and President, Joseph Teixera. Further, Symbol argues that disclosure of these confidential documents would injure Symbol's business as well as that of DCS' competitors who purchase products from Symbol, and would give DCS an improper opportunity to exploit Symbol's confidential and sensitive information in the marketplace. Def.'s Memo in Sup. of its Mot. For Entry of Proposed Protective Order at 1 [Doc. #58].

Symbol contends that DCS seeks highly sensitive information regarding Symbol and its customers, many of whom are DCS' competitors. DCS requested copies of Symbol's price lists for its products; every price exception and discount granted on Symbol products every seller and buyer of Symbol Systems broken out by dollar amount, month, units and country; Symbol's sales projections and forecasts; and documents reflecting Symbol's successful or failed attempts to win customers. Def.'s Memo in

---

[4] Judge Hall issued this protective order on 2/15/07.

Sup. of its Mot. for Entry of Proposed Protective Order at 2 [Doc. #58]. DCS seeks documents regarding Symbol's customers including copies of every contract for each installed base customer, identification of every "current or former" installed base customer who has sold used Symbol equipment or parts; and identification of every request, grant or denial of a price exception to a customer. Id. Additionally, DCS seeks "all documents concerning competition with Data Capture." Id.

DCS argues that the proposed protective order would unfairly limit the companies ability to participate in its own defense or argue its counterclaims. DCS states that, "without Mr. Teixera and Data Capture's active participation, it will be extremely difficult for defense counsel to sufficiently prepare and present Data Capture's case." Def. DCS' Memo in Opp. To Pl.'s Mot. for Entry of Proposed Protective Order at 3 [Doc. #70].

DCS contends that Symbol and DCS are not competitors and Symbol grossly overstates the sensitive nature of the documents sought.[5] DCS' Memo in Opp. to Pl.'s Mot. for Entry of Proposed Protective Order at 3 [Doc. #70]. DCS states that Symbol has pushed DCS out of the market of selling new and used Symbol parts and DCS is no longer even a close competitor of Symbol. However, Symbol argues that DCS competes head-to-head with Symbol in a

---

[5] Although DCS did not address whether DCS and Symbol were competitors at oral argument, it is raised in the Pl.'s Memo in Opposition for Entry of Proposed Protective Order [Doc. #70] and in the Def.'s Reply to Pl.'s Opp. [Doc. #72], so the Court addresses it here.

5

variety of ways: first, selling new products to end-use customers; second, repairing used Symbol Products; and third, offering refurbished products in lieu of Symbol's new products. Def.'s Memo in Sup. of its Mot. for Entry of Proposed Protective Order at 2 [Doc. #58]. DCS also competes with other Symbol resellers. Id.

DCS argues that because most of the documents sought are historical they have little current value to Mr. Teixera or DCS. Additionally, at oral argument, Mr. Teixera stated that after twenty years of experience working closely with Symbol, he already has a general awareness of all of these items and many of them have been shared with DCS in the past. Symbol counters that any confidential information about how Symbol's repair business functions, and has functioned in the past is of great value to DCS. Def.'s Reply in Sup. of its Mot. for Entry of Proposed Protective Order at 2. [Doc. #78].

In light of the potential for the competitive advantage DCS could gain from reviewing documents that reveal pricing strategies, sales projections and forecasts and pricing lists, the defendant's motion for entry of the proposed protective order is **GRANTED [Doc. #55].** Counsel for DCS may seek exceptions from this Order for specific documents, based upon a showing of need.

This is not a recommended ruling. This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636 (b)(1)(A); Fed. R. Civ. P. 6(a), 6(e) and 72(a); and Rule 2 of

6

the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at Bridgeport the 21st day of February 2008.

_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE