UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DATA CAPTURE SOLUTIONS - REPAIR & REMARKETING, INC., Plaintiff, v. SYMBOL TECHNOLOGIES, INC, Defendant. | : : : : : : : : : | CIVIL ACTION NO. 07-CV-237 (JCH) May 20, 2008 |

**RULING ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. No. 109)**

**I.     INTRODUCTION**

Plaintiff Data Capture Solutions - Repair and Remarketing, Inc. ("Data Capture") brings this action against defendant Symbol Technologies, Inc. ("Symbol"), alleging that Symbol has engaged in illegal price discrimination in the sale of its products. Data Capture initially stated claims under section 2 of the Sherman Act as amended by the Robinson-Patman Act, 15 U.S.C. §13, and under the Connecticut Antitrust Act, Conn. Gen. Stat. § 35-45, and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(b). Symbol moved to dismiss all claims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted. Symbol's Motion to Dismiss was granted with respect to Data Capture's claims under the Sherman Act and the Connecticut Antitrust Act. See Amended Ruling (Doc. No. 69). Symbol now moves the court to dismiss Data Capture's remaining claim pursuant to Federal Rule of Civil Procedure 12(c).

1

## II. STANDARD OF REVIEW[1]

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  FED.R.CIV.P. 12(c).[2]  A motion for judgment on the pleadings pursuant to Rule 12(c) is "identical to that of a Rule 12(b)(6) motion for failure to state a claim." Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).

In deciding a motion to dismiss, the court takes the allegations of the Complaint as true, and construes them in a manner favorable to the pleader.  Hoover v. Ronwin, 466 U.S. 558, 587 (1984); see Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overrruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).  A motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6) tests only the adequacy of the complaint.  United States v. City of New York, 359 F.3d 83, 87 (2d Cir. 2004).  A Rule 12(b)(6) motion to dismiss cannot be granted simply because recovery appears remote or unlikely on the face of a complaint.  Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).  However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

---

[1]The court assumes familiarity with the factual background of this case.  See Amended Ruling (Doc. No. 69).

[2]Data Capture does not dispute that this motion was properly brought pursuant to 12(c), nor does it argue that this motion was untimely filed so as to delay trial.  See Pl.'s Opp. to Mot. for Judg. on the Pleadings (Doc. No. 111).

recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-5 (2007).

## III.  DISCUSSION

Data Capture alleges that Symbol used unfair methods of competition, and unfair and deceptive acts and practices, in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Connecticut General Statutes § 42-110b.[3] See Complaint at ¶¶ 31-45. In Journal Publishing, the Connecticut Supreme Court clearly stated that the standard for determining whether a practice is an unfair practice in violation of CUTPA is

> the criteria set out in the cigarette rule by the federal trade commission . . . (1) [w]hether the practice, without necessarily having been previously considered lawful, offends public policy as it has been established by statutes, the common law, or otherwise . . . (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers . . . .

Journal Publishing Co., Inc. v. Hartford Courant Co., 261 Conn. 673, 695 (2002) (internal quotations omitted). The practice need not violate the underlying common law principal or statute at issue to offend public policy. See e.g. Journal Publishing, 261 Conn. at 695 (applying cigarette test to claim based on same underlying facts as antitrust claim that had failed); Associated Investment Co. Limited Partnership v. Williams Associates IV, 230 Conn. 148, 161 (1994) ("the action established by CUTPA provides a remedy for a wider range of business conduct than does the common law, and CUTPA exists wholly independent of any common law claim"); Conway v. Preska, 91 Conn. 484, 493 (1983) (violation of CUTPA can occur if public policy underlying a

---

[3]Although Data Capture has brought two separate claims under CUTPA (see Complaint), the parties discuss these claims as if they are analytically identical for the purposes of the pending Motion. Therefore, the court's analysis of one claim holds for both claims.

3

statute is "offended" by defendant's conduct, even if act itself does not violate statute). "All three criteria do not need to be satisfied to support a finding of fairness." Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 80, 106 (1992). "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." Id.

    A.    First Prong of the Cigarette Test

Symbol argues that DCS cannot satisfy the first element of a CUTPA claim because "the public policy underlying antitrust laws is not implicated by Symbol's price exception program." Def.'s Mem. in Supp. of Mot. for Judg. on Pleadings ("Def.'s Mem. in Supp.") at 4 (Doc. No. 109). Data Capture counters that they have alleged acts which violate "the public policy embedded in the antitrust laws and the law against tortious interference." Pl.'s Mem. in Opp. of Mot. for Judg. on Pleadings ("Pl.'s Mem. in Opp.") at 11 (Doc. No. 111).

Starting first with the policies behind the law of tortious interference, the court notes that in its Reply Memorandum, Symbol states that its price exception program does not implicate "the public policy underlying the antitrust laws (or any other law.)" Def.'s Reply Mem. in Supp. of Mot. for Judg. on Pleadings ("Def.'s Reply") at 6 (Doc. No. 114). Symbol does not argue that a violation of the law against tortious interference with business expectancies could not serve as a basis for a claim under CUTPA. See Def.'s Mem. in Supp. at 3-4 (addressing Data Capture's CUTPA claim only under antitrust law). Therefore the court will assume that Data Capture satisfies the first prong of CUTPA as long as they have alleged a violation of the law of tortious interference.

4

A claim for tortious interference with business expectancies must allege that "(1) a business relationship existed between the plaintiff and another party; (2) the defendant intentionally interfered with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffered actual loss." Hi-Ho Tower, Inc. v. Com-Tronics, Inc., 255 Conn. 20, 32-33 (2000). Additionally, plaintiff must allege that defendant's action was in fact "tortious," that is, it must allege that defendant "was guilty of fraud, misrepresentation, intimidation, or molestation," or that defendant "acted maliciously." Larsen Chelsey Realty Co. v. Sarsen, 232 Conn. 480, 502 n.24.

Data Capture has alleged four instances where Symbol denied them a price exception where the client would have preferred to work with Data Capture over the other distributor given the price exception. See Complaint at ¶¶ 20-3. It has alleged that Symbol denied it a price exception with "the purpose and intent to injure Data Capture in its business" because Data Capture competes with Symbol in the market for used or refurbished products. See id. at ¶ 34. Finally, Data Capture alleges that it suffered harm in the form of lost sales and profits due to Symbol's actions. See id. at ¶ 35.

While Data Capture alleges that Symbol acted with intent to harm it, Data Capture points to no case law to support the position that Symbol's choice not to offer price exceptions was "malicious," or otherwise tortious. Accepting as true Data Capture's contention that Symbol refused to grant Data Capture price exceptions because they were competitors in the sale of refurbished or used products, the court knows of no case law making such intent between competitors illegal, nor has Data

5

Capture pointed to any. As such, Data Capture has failed to state a claim for tortious interference with business expectancies, and thus its CUTPA claim cannot stand on that basis.

Alternately, Data Capture argues that "Symbol's conduct violates the public policy embedded in antitrust and competition laws." Pl.'s Opp. at 7. At no point does Data Capture explicitly state what "public policy embedded in antitrust and competition laws" Symbol has violated. However, the thrust of its argument appears to be that, "[w]here intrabrand competition is important, its restriction can be anticompetitive." Id. at 10. Data Capture relies on Leegin Creative Leather Products, Inc. v. PSKS, Inc., __ U.S. __,127 S.Ct. 2705 (2007), for the proposition that, "[v]ertical agreements establishing minimum resale prices can have either procompetitive or anticompetitive effects, depending on the circumstances in which they are formed." Therefore, Data Capture argues, the court must hear evidence before any anticompetitive effects of Symbol's actions can be determined. See Pl.'s Opp. at 13. The court agrees.

Symbol cites two Connecticut Supreme Court cases which, at first blush, suggest that its price exceptions are per se procompetitive and therefore cannot violate CUTPA. See Def.'s Mem. in Supp. at 5 (citing Journal Publishing, 261 Conn. 673) and at 8 (citing McLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558, 570-1 (1984)). However, neither of those cases are factually analogous. In Journal Publishing, the court found that "limited exclusivity grants are the custom in the newspaper industry. Moreover, such provisions are generally procompetitive and, as such, are in furtherance of public policy and presumptively legal." Journal Publishing, 261 Conn at 696. The McLaughlin Ford court found that a manufacturer did not violate CUTPA by licensing a

6

new franchise close to an existing one, holding that "[i]ncreased competition alone, resulting from a practice containing none of the hallmarks of traditionally unfair practices, does not constitute a cause of action under CUTPA." McLaughlin Ford, 192 Conn. at 571.

The important distinction between these cases and the issue at hand is that, in both Journal Publishing and McLaughlin Ford, the court had an understanding of the common practices of the industry at issue sufficient to determine that the conduct at issue did not have a net anticompetitive effect. In contrast, Data Capture asserts that "Symbol is the dominant seller of Mobile Information Capture and Management Products," and that "[v]irtually all competitive manufacturers in the relevant product market licence Symbol's patented scanning technology." Complaint at ¶¶ 7 and 8. Assuming Data Capture's assertions are true, the court agrees with Data Capture that, "due to Symbol's [alleged] dominant position and the fact that bids often can only be satisfied by Symbol products," the court cannot determine on the pleadings whether Symbol's price exceptions have a net anticompetitive effect that could violate CUTPA. Pl.'s Mem. at 10. Certainly, such a conclusion could not be reached without an understanding of the market for products like Symbol's products.

B.     Second Prong of the Cigarette Test

The court turns to whether Data Capture has alleged that Symbol engaged in acts where were "immoral, unethical, oppressive, or unscrupulous." Journal Publishing, 261 Conn. at 695. Symbol argues that Data Capture has not plead facts with sufficient particularity to satisfy the second prong of the Cigarette Test. See Pl.'s Reply at 6

7

(citing S.M.S. Textile Mills, Inc. v. Brown, Jacobson, Tillinghast, Lahan and King, P.C., 32 Conn.App. 786, 797 (1993)).

Data Capture alleges that Symbol denied it price exceptions to punish it for competing with Symbol in sales of used and refurbished products. See Complaint at ¶ 34. Assuming this is true, as the court must under the standard of Rule 12(b)(6), the court finds that this allegation is sufficiently detailed that a reasonable trier of fact could infer that Symbol engaged in acts that were "immoral, unethical, oppressive or unscrupulous." Journal Publishing, 261 Conn. at 695. Therefore, Data Capture has alleged facts sufficient to satisfy the second prong of the Cigarette test.

### C. Third Prong of the Cigarette Test

To satisfy the third prong, a party must allege that the injury was (1) substantial; (2) not outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) not an injury that the consumers themselves could have avoided. Cheshire Mortgage, 223 Conn. 80, at 113 (internal citation omitted). Symbol argues that Data Capture has not plead a "substantial injury" because harm to a competitor due to increased competition does not constitute a "substantial injury" under Journal Publishing or McLaughlin Ford. See Def.'s Mem. at 6. However, Symbol's argument ignores that Data Capture also alleges that "competition . . . in the sale of Mobile Information Capture and Management Products generally, has been injured." Complaint at ¶ 35. As discussed above in Section A, infra, the court cannot determine on the basis of the pleadings whether or not Symbol's price exceptions have a net pro-competitive effect. As such, Data Capture has alleged injury to competition sufficient to state a claim for substantial injury under the third prong of the Cigarette Test.

## IV. CONCLUSION

For the foregoing reasons, Data Capture has plead facts sufficient to state a claim under CUTPA. Therefore, Symbol's Motion for Judgment on the Pleadings (Doc. No. 109) is denied.

**SO ORDERED**

Dated at Bridgeport, Connecticut this 20th day of May, 2008.

    /s/ Janet C. Hall
Janet C. Hall
United States District Judge